# PENNSYLVANIA CO. FOR INSURANCES ON LIVES AND GRANTING ANNUITIES v. UNITED STATES.

## No. 1171.

District Court, E. D. Pennsylvania.

Nov. 7, 1942.

Saul, Ewing, Remick & Harrison and Francis H. Bohlen, Jr., all of Philadelphia, Pa., for plaintiff.

Thomas J. Curtin, Asst. U. S. Atty., and Gerald A. Gleeson, U. S. Atty., both of Philadelphia, Pa., and E. E. Angevine, Sp. Asst. to Atty. Gen., for defendant.

GANEY, District Judge.

This is a suit to recover $2,347.11 with interest on varying amounts from July 30, 1937 together with reasonable costs and disbursements representing income and capital stock tax returns paid the Collector of Internal Revenue by reason of a ruling by the Commissioner of Internal Revenue that the trust herein created should be classified as an association for federal tax purposes.

The Pennsylvania Company for Insurances on Lives and Granting Annuities at the time mentioned in the complaint in this case was trustee under a trust agreement dated August 9, 1932, with Capital Savings Plan, Inc. (hereinafter referred to as Capital), which was a Pennsylvania corporation organized in 1931 having its principal place of business in Philadelphia. The Capital issued and distributed to members of the public its contract certificates described in said trust agreement of August 9, 1932, as supplemented, from August 23, 1932 to July 27, 1934. Until December 31, 1938 when Capital merged into Independence Shares Corporation, another Pennsylvania corporation, it also furnished or sold as a dealer the Independence trust shares which were required to be purchased under its contract certificates, and also repurchased the trust shares which were sold from time to time pursuant to its contract certificates. Since December 31, 1938 Independence Shares Corporation has sold the trust shares required to be purchased under the contract certificates and has repurchased the trust shares required to be sold thereunder, but it has not issued or distributed any of the Capital contract certificates. The Independence trust shares are the trust shares designated for purchase under the contract certificates, although in accordance with Article VI, Section I of the trust agreement, at any time at its option, and upon notice to the trustee, provision is made that it "may substitute for Independence Trust Shares or for any other substituted Trusteed Property shares of a similar fixed investment trust having underlying securities of a standard nature and diversified in character, which said underlying securities are reasonably comparable to the securities underlying said Independence Trust Shares or, in case such shares are not available or the purchase of the same is impracticable, receipts of banks, trust companies or banking institutions approved by the Trustee, or certificates of deposit or of interest or of participation issued by banks, trust companies or banking institutions approved by the Trustee evidencing deposit of, or representing blocks of, underlying securities reasonably comparable to the securities

underlying Independence Trust Shares in amounts or units reasonably comparable to certificates for Independence Trust Shares if, in the judgment of the Company, such latter investment would be more beneficial to the Investor * * * ". Pursuant to the terms of the trust agreement the contract certificates were issued thereunder of three types: (a) those under which the investor agreed to make 120 monthly payments (usually $10 per month) without insurance benefits; (b) those of the same length of time and the same amounts with insurance benefits; and (c) fully paid contract certificates. Application would be made to Capital for the particular type of contract certificates desired and they were in turn delivered to the trustee with at least one periodic payment in the case of periodic payment contract certificates, and with the entire payment in the case of fully paid contract certificates. Thereupon the trustee would execute its trustee's certificate and would enter on its registry book the name of the investor, and a separate account was opened on his behalf. In the case of periodic payment contract certificates, the trustee would deduct: (a) a trustee's fee of 25¢ for each $10 payment deducted from each periodic payment; (b) the charge of Capital of $60 per $10 a month contract certificate deducted from the first twelve monthly payments; and (c) in the case of certificates with insurance benefits, the amount of the insurance premium. In the case of the fully paid contract certificates the authorized deductions from the single payment were $2\frac{1}{2}\%$ thereof as the trustee's fee and $2\frac{1}{2}\%$ as the charge of Capital. After the deductions had been made from the payments, the trustee was required by the contract certificates and the trust agreement, to apply the balances remaining to the purchase of Independence trust shares, and at the same time noted on each of the separate accounts of the investors, the number of shares purchased for him carried to the third decimal place, and also a trust share balance showing the total number of trust shares then held for him. Semiannual distributions were regularly paid on Independence trust shares, the trust agreement providing that such distributions were to be applied to the purchase of additional trust shares in the case of the periodic payment contract certificates, and they were to be reinvested or remitted at the option of the investor in the case of

fully paid contract certificates. With the consent of Capital the investor holding periodic payment contract certificates might be permitted, if he so desired, to instruct the trustee to remit the distributions received on the trust shares held for him. The investor could at any time terminate his contract certificate and receive an Independence trust share certificate for the number of trust shares held for him, or the proceeds of sale of the trust shares held for him, and he also might make partial withdrawals of full trust shares. As these rights were exercised, the trustee sold if instructed the necessary trust shares and delivered either an Independence trust share certificate for the proper number of full shares held for him or its check for the proceeds of all of the trust shares sold. It was the trustee's practice to purchase on each business day with the funds available from payments and distributions received after making the authorized deductions to purchase the number of trust shares which could be purchased with such funds at the asked price for the trust shares in effect on that date, and by computating machines calculated the number of trust shares purchased at that time to the third decimal place. As the trust shares were purchased from time to time the Independence trust share certificates were registered in the name of the trustee, and the insurance under the periodic payment contract certificates was affected by a blanket life insurance policy payable to the trustee, insuring the lives of the particular investors to the amount of the unpaid portion from time to time under their periodic payments. The duties of the trustee under the trust agreement were carried out under the supervision of one of its vice-presidents, using only its regular business stationery in connection with the trust, and kept a registry book in which were entered the contract certificates, a cash account, card account, a distribution account, and other requisite accounts necessary for the proper administration of the fund. The investors had no voting rights, no provision for meetings, and the trust agreement made no provision for directors, officers or employees, stationery, seal or minute book.

The question of law involved in this case is whether the periodic payment plan trust such as hereinabove set out is properly classified as an association and therefore taxable as a corporation within the

meaning of Section 1001 (a) (2) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev. Code, § 3797 (a) (3), and similar provisions of subsequent acts.

This case was argued before the court in connection with the trust agreement of Wellington Foundation, Inc., and repeated reference was made also in the argument to the trust agreement of Independence trust shares and Deposited Bank shares— this for the reason that all of the said cases concern themselves with whether or not the particular trust agreement involved is taxable as an association within the applicable revenue laws.

It seems to me after a thorough examination of the trust agreement in this case as well as that of the Wellington Foundation, Inc., which is substantially similar to the instant one, that this trust should be classified as an association and taxable as such. I am persuaded to this point of view by reason of the fact that in this case, the Trustee had the power to vary the investments, that is he was not confined to the same stock which he had selected for the first unit and since the stocks of all units constitute a single pool in which each contract certificate holder shared, in accordance with his proportion of all the certificates issued, the investment of all contract certificate holders, varied at the will of the trustee. While the trustee was not invested with absolute power to purchase any securities for its portfolio which it desired, and while in the instant case substitution had never actually been made, nevertheless, the existence of the opportunity to substitute under the trust agreement, rather than the exercise of it, seems to me must be controlling and there was sufficient management when coupled with the other duties of the trustee and taken in connection with the powers and duties of the investors and depositors to bring it outside the circumstances of a simple trust. I feel the facts constituting the instant trust agreement fall within the ruling laid down by the court in the case of Commissioner v. North American Bond Trust, 2 Cir., 122 F.2d 545, where the Trustee had a somewhat similar power of substitution with regard to investments, and the court there held that the trust should be classified as an association.

Accordingly, the ruling of the Commissioner of Internal Revenue is sustained and judgment is entered for the defendant.